UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DUSTIN BOUDREAUX | CIVIL ACTION |
| VERSUS | NO. 24-236-RLB |
| ST. CHARLES GAMING COMPANY, LLC, ET AL. | CONSENT |

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Before the Court is St. Charles Gaming Company, LLC's ("Defendant") Motion for Summary Judgment. (R. Doc. 40). Plaintiff and Intervenor oppose the Motion. (R. Docs. 43, 44). Defendant filed a Reply. (R. Doc. 45).

## I.     Background

On or about November 28, 2023, Dustin Boudreaux ("Plaintiff" or "Petitioner") initiated this personal injury action in State court, naming as defendants St. Charles Gaming Company, LLC, Caesars Entertainment, Inc., Caesars Resort Collection, LLC, CEOC, LLC, Isle of Capri Casinos, LLC, and Caesars Entertainment Operating Company, LLC. (R. Doc. 1-1).

Plaintiff alleges that he was injured while working at a casino owned and operated by Defendants:

> At the time of Petitioner's injury, Petitioner was working for Gallo Mechanical as a pipe fitter. Specially, on the date of Petitioner's injury, he was working at a casino formerly known as the Isle of Capri Casino and now known as the Horseshoe Lake Charles (hereinafter referred to as the "Casino"). The Casino was and/or is owned and operated by Defendants and at the time of Petitioner's injury was undergoing renovations. Defendants' company man gave Petitioner and his coworkers tasks to be completed each day and supervised the work they were doing at the Casino.
>
> On or about November 28, 2022, Defendants' company man instructed Petitioner to check a valve through the mechanical room of the casino. Defendants' company man insisted that this task and the other tasks Petitioner and his coworkers were to perform be done quickly as the renovations, who was

working for Gallo Mechanical, LLC ("Gallo") as a pipe fitter at the time of the incident, at the Casino were behind schedule. The mechanical room, owned and maintained by Defendants, was dimly lit. To access the valve at issue, Petitioner had to traverse a 12-foot ladder in the mechanical room. While Petitioner attempted to ascend the ladder, he hit his head on a trapeze hanger that jutted out through the ladder. Unfortunately, the trapeze hanger was not marked or flagged as a hazard. Petitioner fell from the ladder onto the floor below. Petitioner seriously injured his neck and back from hitting the trapeze hanger and from the subsequent fall. Petitioner immediately reported his injury. Petitioner has a pending recommendation for a spinal fusion as a result of the injuries that form the basis of this lawsuit.

(R. Doc. 1-1 at 2-3). Plaintiff seeks recovery under Louisiana negligence law as follows:

> The direct and proximate cause of the Incident and injuries sustained by Petitioner was the negligence of Defendants, their agents, employees, successors, insureds, and/ or representatives, particularly in the following, non-exclusive, respects:
>
> a. Failure to conduct routine Job Safety Analyses at the Casino for the work that Defendants were supervising and controlling;
>
> b. Failure to inspect the area of the Casino where the Incident occurred;
>
> c. Failure to properly plan and execute operations at the Casino for the work that Defendants were supervising and controlling;
>
> d. Failure to provide petitioner with adequate assistance and manpower for the work that Defendants were supervising and controlling;
>
> e. Failure to utilize safety equipment and other equipment that was available to Defendants for the work that Defendants were supervising and controlling;
>
> f. Failing to recognize hazards in the work that Defendants were supervising and controlling;
>
> g. Failing to warn of known hazards in the work that Defendants were supervising and controlling;
>
> Together with any and all other acts or omissions to be proven at the trial of this matter.

(R. Doc. 1-1 at 3).

While the action was pending in State Court, the named Defendants filed an Answer. (R. Doc. 1-5 at 12-16).

On March 25, 2024, the following business entities removed this action: St. Charles Gaming Company, LLC, Caesars Entertainment, Inc., Caesars Resort Collection, LLC, CEOC, LLC, Isle of Capri Casinos, LLC (incorrectly identified as Isle of Capri Casinos, Inc.), and Caesars Entertainment Operating Company, LLC (incorrectly identified as Caesars Entertainment Operating Company, Inc.), asserting that Court can exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332. (R. Doc. 1).

On November 4, 2024, the Court entered into the record a Complaint in Intervention filed by Plaintiff's employer, Gallo Mechanical, LLC ("Gallo"), naming St. Charles Gaming Company, LLC as the sole defendant-in-intervention. (R. Doc. 15). Gallo intervened as a plaintiff to obtain reimbursement of workers compensation benefits paid to Plaintiff.

St. Charles Gaming Company, LLC ("Defendant") is the only defendant and party to file a Rule 56 motion.[1] Defendant seeks a ruling dismissing all of Plaintiffs' claims, with prejudice, because it "did not exercise any supervision or control over the construction work being performed by Plaintiff and his employer on its premises" and, therefore, "Plaintiff cannot show that Defendant owed him a duty or that Defendant breached any duty." (R. Doc. 40-1 at 1).

II.     Law and Analysis

A.     Legal Standards

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of their pleadings, but rather must come forward with

---

[1] The remaining named defendants, although represented by the same counsel, did not expressly join the Motion for Summary Judgment.

"specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, summary judgment must be entered against the plaintiff if he or she fails to make an evidentiary showing sufficient to establish the existence of an element essential to his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Without a showing sufficient to establish the existence of an element essential to the plaintiff's claim, there can be "no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." *Celotex*, 477 U.S. at 323.

Local Rule 56 controls the submission of Statements of Material Facts and Opposing Statements of Material Facts. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly converted." LR56(f). Nevertheless, the Court can still consider record evidence to determine whether there is a factual dispute. *See Slaughter v. Exxon Mobile Corp.*, No. 23-1642-SDD-RLB, 2026 WL 222535, at *2 (M.D. La. Jan. 28, 2026) (citing cases).

**B.    The Material Facts**

The following material facts are undisputed unless otherwise noted. (R. Doc. 40-2, "Def. St."; R. Doc. 44-1, "Pl. St.").

On November 28, 2022, Plaintiff was working as a pipe fitter for Gallo performing work at the Isle of Capri/Horseshoe Casino in Lake Charles, Louisiana. (Def. St. ¶¶ 1, 6; Pl. St. ¶ 1). Gallo was working as a subcontractor to Lemoine Construction to construct and renovate areas for the Casino to relocate to a land-based location after sustaining hurricane damage. (Def. St. ¶¶

4

2-3, 6; Pl. St. ¶¶ 2-3). On the day of the incident, the Casino had remained closed to the public considering the ongoing construction. (Def. St. ¶¶ 4, 6; Pl. St. ¶ 4).

There is no dispute that Defendant (through its employees or representatives) did not supervise or control the work being conducted by Plaintiff or Gallo at the time of the subject accident. Defendant asserts that it did not retain any supervision or control over Plaintiff's work, and that Plaintiff received all instructions/directions from his employer Gallo. (Def. St. ¶¶ 5, 12). Plaintiff, in turn, asserts that "[w]hile Gallo assigned tasks, the Casino retained operational control of the mechanical room, including lighting conditions, access, and the preexisting rod that caused the injury." (Pl. St. ¶¶ 5, 12). Accordingly, there is no genuine dispute that (contrary to the Petition) Defendant and/or its "company man" did not specifically supervise or control the actual work (*i.e.*, tasks) performed by Plaintiff. Instead, Plaintiff asserts that Defendant is liable because it maintained "control" over the conditions of the underlying workspace, *i.e.*, the mechanical room, which contained the hanger assembly at issue.

There is no dispute that Gallo instructed Plaintiff to change certain valves in the mechanical room, although Plaintiff notes that "these instructions required him to work within the Casino's [poorly lit] mechanical room and ascend/descend a ladder where the hazard existed." (Def. St. ¶ 6; Pl. St. ¶ 6). The parties also agree that Plaintiff "needed to loosen a [hanger] with thread rods to put shields underneath" and that Plaintiff hit his head on an all-thread rod as he "ascended a 12-foot ladder to check the valve." (Def. St. ¶¶ 7-8; Pl. St. ¶ 7). Plaintiff adds that he "was working on one hanger, but the rod he struck was a different, preexisting rod extending downward from a separate trapeze hanger" and that this "protruding rod was uncut, unmarked, and extended into his ladder path." (Pl. St. ¶ 7, Pl. Add. St. ¶ 5).

Plaintiff also adds that the "rod was not visible due to dim lighting." (Pl. St. ¶ 8, Pl. Add. St. ¶ 11).

Defendant asserts that the threaded rod "was at least 10 feet in the air inside the mechanical room." (Def. St. ¶ 9). Plaintiff asserts that "[w]hile the hanger was elevated, the rod itself protruded downward into the ladder path, low enough for Plaintiff to strike." (Pl. St. ¶ 9). There is no dispute that "Plaintiff admitted he was not looking directly up as he was ascending the ladder." (Def. St. ¶ 10, Pl. St. ¶ 10). Plaintiff adds, however, that he also "testified he could not see the rod because the mechanical room was poorly lit, not because of any failure to look" and that he "could not look directly up or his [hard] hat would have fallen off his head." (Pl. St. ¶ 10).

The parties agree that the Plaintiff did not know who installed the threaded rod or how long it was present prior to the incident. (Def. St. ¶ 11; Pl. St. ¶ 11).

### C.    Analysis

#### 1.    Applicable Legal Standards for Premises Liability Claims

Louisiana substantive law governs the resolution of whether Defendant is liable in this removed diversity action. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "To determine Louisiana law . . . , this Court should first look to final decisions of the Louisiana Supreme Court." *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000) (citation omitted). If the Louisiana Supreme Court has not ruled on the issue at hand, "then this Court must make an '*Erie* guess' and 'determine as best it can' what the Louisiana Supreme Court would decide." *Id.* (quoting *Krieser v. Hobbs,* 166 F.3d 736, 738 (5th Cir. 1999)).

The Petition is silent on the statutory source of Plaintiff's alleged "premises liability" claim, which could potentially arise under Louisiana Civil Code Articles 2315, 2316, 2317 or

2317.1. *See* La. Civ. Code art. 2315(A) ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."); La. Civ. Code art. 2316 ("Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."); La. Civ. Code art. 2317 ("We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.");[2] La. Civ. Code art. 2317.1 ("The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care."); *see Lawrence v. Rocktenn CP, LLC*, No. 16-0821, 2017 WL 2261741, at *2 (W.D. La. May 22, 2017) ("In Louisiana, the owner or custodian of immovable property has a duty to keep his property in a reasonably safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence. The basis for such delictual liability is established in Louisiana Civil Code articles 2315, 2317 and 2317.1.") (citations omitted).

Regardless of the statutory source of the alleged duty, Plaintiff seeks recovery, under Louisiana law, based on the alleged negligence of the premises owner of the Casino (*i.e.*,

---

[2] Prior to 1996, a premises liability claim brought under Article 2317 was based on strict liability given that there was no burden of proving the defendant's scienter, *i.e.*, that the defendant "knew of should have known" of the alleged defect. *Lasyone v. Kansas City S. R.R.*, 786 So. 2d 682, 689 (La. 2001). The Louisiana Supreme Court has recognized that with the adoption of Article 2317.1, which requires knowledge or constructive knowledge, "the [Louisiana] Legislature effectively eliminated strict liability under Article 2317, turning it into a negligence claim." *See Burmaster v. Plaquemines Parish Gov't*, 982 So.2d 795, 814 n.1 (La. 2008) (citation omitted).

Defendant). Plaintiff has not alleged a claim of vicarious liability based on the negligence acts of his employer, Gallo, or the general contractor, Lemoine.[3]

To establish a claim for premises liability based on an alleged unreasonably dangerous condition on the premise, the injured plaintiff "must prove that (1) the [thing] was in the defendant's custody; (2) the thing contained a vice or defect which presented an unreasonable risk of harm to others; (3) the defective condition caused the damage; and (4) the defendant knew or should have known of the defect." *Cormier v. Dolgencorp, Inc.*, 136 F. App'x 627, 627-28 (5th Cir. 2005); *see Poindexter v. United States.*, 244 Fed. App'x 561, 564 (5th Cir. 2007).

Here, Plaintiff raises a premises liability claim in the context of a principal-independent contractor relationship, with Defendant as the premises owner (the principal) that allegedly supervised and controlled the work of Lemoine/Gallo (the independent contractors). Plaintiff alleges that Defendants are negligent for failing to conduct routine job safety analyses, to properly plan and execute operations, to provide adequate assistance and manpower, to utilize proper safety equipment, and to recognize and warn of hazards associated with "the work that Defendants were supervising and controlling." (R. Doc. 1-1 at 3). Plaintiff further alleges that the work conducted was in response to instructions of a "company man" (*i.e.*, a supervisory

---

[3] "It is well-established that a principal is not liable for the negligent acts of an independent contractor in the course of performing contractual obligations." *Thomas v. Burlington Res. Oil & Gas Co.*, No. 99-3904, 2000 WL 1528082, at *1 (E.D. La. Oct. 13, 2000) (citing *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 549 (5th Cir. 1987)). "This general rule, often known as the independent-contractor defense, is subject to 'two exceptions:' (1) when the independent contractor is engaged in an ultrahazardous activity; or (2) when the principal 'retains or exercises operational control' or expressly or impliedly authorizes an unsafe practice." *Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 WL 3092859, at *6 (E.D. La. Aug. 3, 2022). To the extent Plaintiff attempted to allege a claim of vicarious liability based on the second exception to the independent-contractor defense, he has failed to set forth any evidence that Defendant maintained "operational control" over Lemoine's or Gallo's work practices. "Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way. *Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 WL 3092859, at *6 (E.D. La. Aug. 3, 2022) (citing *Fruge ex rel. v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003)); *see also Hawkins v. Evans Cooperage Co., Inc.*, 766 F.2d 904, 907-08 (5th Cir. 1985) (finding there was no operational control because the principal checked on operations but never supplied detailed instructions).

8

employee of the Defendants). (R. Doc. 1-1 at 2-3). Finally, Plaintiff alleges that the workspace (the mechanical room) was "dimly lit" and further alleges that Plaintiff hit his head on a hazard (the trapeze hanger) will ascending a 12-foot ladder to access a valve. (R. Doc. 1-1 at 2-3).

"As a general rule, 'the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm.'" *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994) (quoting *Mundy v. Dep't of Health & Hum. Res.*, 620 So. 2d 811, 813 (La. 1993)). "This duty extends to employees of independent contractors, for whose benefit the owner must take reasonable steps to ensure a safe working environment." *Id*. (citing *Boudreaux v. Exxon Co., U.S.A*., 451 So.2d 85 (La. App. 3rd Cir. 1984)). "But this duty 'does not extend so far as to require the [premises owner] to intervene in and correct the work practices selected by an independent contractor.'" *Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 WL 3092859, at *9 (E.D. La. Aug. 3, 2022); *see also Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 551 (5th Cir. 1987) ("We conclude that Louisiana law will not support the imposition of liability upon Shell for failure to intercede in Hercules' decision to work without lights."); *Kent v. Gulf States Utilities Co.*, 418 So. 2d 493, 500 (La. 1982) (finding that the State project inspector had no duty to intervene and provide employee with a fiberglass rake while working to widen a public roadway with thirty-foot aluminum pole that came in contact with high voltage electrical lines).

Furthermore, "in a principal-independent contractor relationship, the principal does not owe a duty to protect the contractor's employees from risks inherent to the job." *Lopez v. McDermott, Inc.*, No. 17-8977, 2020 WL 3668059, at *7 (E.D. La. July 6, 2020). "Essentially, while a premises owner may be directly liable for hazards inherent in the premises, the owner cannot be liable for hazards inherent in a contractor's job." *Id*. *See Perkins v. Gregory Mfg. Co.*,

671 So. 2d 1036, 1040 (La. App. 3d Cir. 1996) (the risk of being injured by a falling tree is a risk inherent to the role of a tree trimmer engaged in logging operations).

Regardless of the underlying statute providing the general duty at issue, the Court will analyze the instant "premises liability" claim pursuant to the Louisiana negligence standard, which applies a duty/risk analysis to determine liability. "Under the duty/risk analysis, the plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and, (5) proof of actual damages (the damages element)." *Id.* "If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable." *Id.*

### 2.    The Sufficiency of the Pleadings

As an initial matter, Defendant argues that Plaintiff's Petition solely raises a cause of action for negligence based on Defendants' alleged "failures" associated with the "work that Defendants were supervising and controlling," but "does not state a claim of cause of action, such as premises liability claim, related to the threaded rod." (R. Doc. 40-1 at 6). Defendant now asserts that Plaintiff failed to amend the pleadings to add any such claim, and it should not be considered by the Court.

In opposition, Plaintiff argues that he has sufficient plead a premises liability claim with respect to the threaded rod under the Louisiana "fair notice" pleading standard by alleging "a protruding condition in the mechanical room, inadequate lighting, and a resulting fall and injury," and that, if this is insufficient, he should be provided the opportunity to amend the

pleadings pursuant to Rule 15 of the Federal Rules of Civil Procedure. (R. Doc. 44 at 9). Plaintiff further asserts that he properly pled the elements of a premises liability claim under Louisiana law, which is supported by the record: "(1) a condition on the property presented an unreasonable risk of harm; (2) the owner knew or should have known of it; (3) the owner failed to correct it; and (4) the plaintiff was injured as a result." (R. Doc. 44 at 10).

Contrary to Plaintiff's assertions, the federal pleading standard applies in this removed action. The Fifth Circuit first held that the federal pleading standards apply in a removed action based on diversity to determine whether a non-diverse defendant was improperly joined. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 203 (5th Cir. 2016). The Fifth Circuit later held, more generally, that "[u]pon removal, the federal pleading standards control." *Pena v. City of Rio Grande City*, 879 F.3d 613, 617 (5th Cir. 2018). When the pleadings are challenged, however, plaintiffs should be permitted leave to amend their pleadings in order to conform to the federal pleading standard. *Palmquist v. Hain Celestial Grp., Inc.*, 103 F.4th 294, 302-03 (5th Cir. 2024) ("[A] plaintiff should not be penalized for adhering to the pleading standards of the jurisdiction in which the case was originally brought. Otherwise, where there are potentially diverse parties, plaintiffs would essentially have to plead the federal pleading standard in state court for fear of having their claims against non-diverse parties thrown out upon reaching federal courts for failing to comply with the demands of Rule 12(b)(6)."). "Removal from a notice-pleading jurisdiction is a natural time at which justice would call for the court to permit such an amendment." *Pena,* 879 F.3d at 617.

Having considered the pleadings, and the arguments of the parties, the Court finds the Petition sufficient to raise a premises liability claim under the negligence standard when viewed through the federal pleading standards. Given that Plaintiff has all but abandoned his allegations

11

based on Defendant's alleged supervision and control of his underlying task of valve repair (whether through the direction of a "company man" or otherwise), the Court will construe the pleadings as alleging a negligence claim based on Defendant's ownership and control of the underlying workspace, including the protruding threaded rod at issue.

Plaintiff has alleged sufficient facts in support of a claim that Defendants, as the owner of the Casino, breached its duty to exercise reasonable care for the safety of persons on its premises and to not expose such persons to unreasonable risk of injury or harm. *See Mundy*, 620 So. 2d at 813. In pleading that Defendant did not provide a safe workspace, Plaintiff alleges that the mechanical room in which the work took place was "dimly lit" and that the underlying incident was a result of a trapeze hanger that "was not marked or flagged as a hazard" in the room. (R. Doc. 1-1 at 3). Plaintiff seeks recovery for the alleged failure "to recognize hazards" and failing "to warn of known hazards." (R. Doc. 1-1 at 3). Plaintiff's current focus on the alleged unreasonably dangerous condition of the protruding threaded rod – which is a component part of the trapeze hanger system – does not improperly expand the pleadings. And even if Plaintiff's pleading of a specific premises liability claim with respect to the protruding threaded rod was not sufficient to survive a Rule 12(b)(6) challenge,[4] the Court would find it appropriate to provide Plaintiff with the opportunity to clarify the pleadings before trial. Defendant was aware of Plaintiff's premises liability theory of recovery given the discovery conducted in this action.

---

[4] A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

The Court need not determine, however, whether additional pleading is required. As discussed below, the Court concludes that the protruding threaded rod did not constitute an unreasonably dangerous condition and, therefore, Defendant did not breach its duty to provide a safe work environment.

### 3.     The Duty Element

The Court will first address the duty element. "The existence of a duty is a question of law." *Farrell v. Circle K Stores, Inc.*, 359 So. 3d 467, 473 (La. 2023) (citations omitted). "The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Id.*

As stated above, the Court need not determine, for the purposes of this ruling, the specific statutory source for the alleged duty to keep the premises in a reasonably safe condition. *See id.* at 473-74 ("The general rule is that the owner or custodian of property has a duty to keep the premises in a reasonably safe condition. The owner or custodian must discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence."). The Court will, however, turn first to the issue of whether there is any genuine dispute that Defendant had the requisite "custody" or "garde" over the mechanical room and protruding threaded rod at issue.

"Louisiana courts have generally held that (1) ownership of a thing establishes a rebuttable presumption of custody or 'garde,' and (2) in a case of non-ownership, a defendant may be found to have custody over property when he exercises direction and control of the thing and derives some benefit from it." *Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 441-42 (5th Cir. 2021). Custody or garde of a thing is a question of fact. *Dupree v. City of New Orleans*, 765 So. 2d 1002, 1009 (La. 2000). "[I]in determining whether a thing is in one's

13

custody or garde, courts should consider (1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing." *Id*.

Here, Plaintiff alleges that the "Casino was and/or is owned and operated by Defendants" at the time of Plaintiff's injuries. (R. Doc. 1-1 at 2). There is no dispute that Defendant owned the Casino and operated it while the Casino was owned by the public. Defendant specifically represents that it was "the premises owner." (R. Doc. 45 at 3).[5] There is also no dispute that the trapeze hanger assembly in the mechanical room was present prior to the underlying incident and was not installed by Lemoine or Gallo. (Def. St. ¶ 11; Pl. St. ¶ 11).[6] Finally, there is no dispute that Defendant owns the underlying real property, including the mechanical room and the protruding threaded rod at issue.

Nevertheless, Defendant argues that it did not have custody or garde over the protruding threaded rod at issue because the Casino was closed to the public for renovations. Defendant specifically asserts that it "did not exercise control over the mechanical room or owe a duty to Defendant on the day of the accident" because the "general contractor, Lemoine, had the key to the mechanical room and controlled who had access to the room on the day of the accident." (R. Doc. 45 at 2).

"[A] service contract by itself does not create garde." *Spott v. Otis Elevator Co.*, 601 So. 2d 1355, 1363 (La. 1992) (finding that elevator maintenance firm did not have "garde" over elevator where owner was the primary party benefiting from elevators on its premises and where maintained firm employee only visited the location "weekly for a brief period of time" and the

---

[5] (*See* R. Doc. 44-2, Declaration of Michael Eddington; R. Doc. 44-3 at 4, Defendant's Response to Interrogatory No. 9; R. Doc. 44-4 at 14-17, Israel Dep. Tr. 53-56; R. Doc. 44-5 at 6-19, Boudreaux Dep. Tr. 19-25, 32, 54-59).
[6] (*See* R. Doc. 44-4 at 6-11, Israel Dep. Tr. 22-29).

service contract specifically provided that the owner retained control of the elevator). "The one exception is where the service contractor has 'exclusive care and custody' of the thing in question, such as where it has been hired to be on the premises full time to care for the thing." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 838 F. Supp. 2d 497, 512 (E.D. La. 2012) (citing *Coleman v. Otis Elevator Co.,* 582 So.2d 341, 343 (La. Ct. App. 4th Cir. 1991) (Otis was liable where it had exclusive custody and control of elevators by placing an employee full time on premises of Charity Hospital to service its forty-eight elevators)).

The presumption is that Defendant, as owner of the premises, had custody or guard over the mechanical room and the protruding threaded rod.  Defendant did not rebut that presumption. The parties have not directed the Court to any evidence that Defendants assigned its rights, or delegated its duties, with respect to any aspect of the Casino's premises during the renovations. While Defendant argues that Lemoine "controlled access to the mechanical room during the project" by having "the key" to the room (R. Doc. 40-1 at 4; R. Doc. 45 at 2), Defendant does not submit any evidence in support of finding that it forfeited its own ability to access the room during the renovation, much less that it transferred custody or garde over any component parts or appurtenances of the Casino's structure. Furthermore, there is no evidence that Lemoine, Gallo, or Plaintiff were full time contractors on the premises during the renovations.

In short, the Court finds insufficient evidence to conclude that Defendant has rebutted the presumption that it had custody or garde over the mechanical room or protruding threaded rod at issue for the purposes of establishing a duty of duty to keep the premises in a reasonably safe condition, including discovering and warning of any unreasonably dangerous condition on the premises. Accordingly, the Court will conclude that Defendant owed Plaintiff a duty of reasonable care to provide a safe workplace.

The Court notes that Plaintiff also relies on certain Occupational Safety and Health Act ("OSHA") standards in an attempt to define the scope of Defendant's duty of reasonable care. (R. Doc. 44 at 5-6). These OSHA regulations do not create a private cause of action by a non-employee. 29 U.S.C. § 654; *see Melerine v. Avondale Shipyards, Inc.,* 659 F.2d 706, 710 (5th Cir. 1981). Courts have, however, considered these regulations when determining whether a premise has an unreasonably dangerous condition. *See Manchack v. Willamette Indus.*, *Inc.*, 621 So. 2d 649, 653 (La. Ct. App. 2d Cir. 1993); *see also Rabon v. Automatic Fasteners, Inc.*, 672 F.2d 1231, 1238 and n. 12 (5th Cir. 1982) ("Although OSHA creates no private right of action, violation of an OSHA regulation is evidence of negligence or, in appropriate circumstances, negligence per se" but questioning the relevancy of the OSHA regulations in that case because the plaintiff was not an employee). To the extent applicable, the Court will consider the OSHA regulations set forth by Plaintiff in determining whether there was an unreasonably dangerous condition, which is determined in the context of the breach analysis below.[7]

### 4. The Breach Element

Having established that Defendant had a duty of reasonable care, the Court will now turn to whether Plaintiff can establish that Defendant breached its statutory duty, which is "a question of fact or a mixed question of law and fact." *Farrell*, 359 So. 3d at 474 (citation omitted). Louisiana law applies the risk/utility balancing test to determine breach of a duty. *Id*. The Louisiana Supreme Court "has synthesized the risk/utility balancing test to a consideration of

---

[7] Plaintiff appears to assert that Defendant is liable as a "controlling employer" pursuant to 29 C.F.R. § 1926.16(c). That provision speaks in terms of the responsibilities of prime contractors and subcontractors, not premises owners. *See* 29 C.F.R. § 1926.16(c) ("To the extent that a subcontractor of any tier agrees to perform any part of the contract, he also assumes responsibility for complying with the standards in this part with respect to that part. Thus, the prime contractor assumes the entire responsibility under the contract and the subcontractor assumes responsibility with respect to his portion of the work. With respect to subcontracted work, the prime contractor and any subcontractor or subcontractors shall be deemed to have joint responsibility."). As discussed above, Plaintiff does not assert a claim for vicarious liability based on the negligence of either Lemoine (the prime contractor) or Gallo (the subcontractor).

16

four pertinent factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and, (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature." *Id.* Resolution of the issue of whether an unreasonable dangerous condition is present may be determined on summary judgment absent a genuine dispute of material fact. *Id.* at 476.

Having considered the record, and the arguments of the parties, the Court concludes that Plaintiff has not established a genuine dispute that the protruding threaded rod at issue presented an unreasonably dangerous condition. Accordingly, summary judgment is warranted. The Court will consider the four factors of the risk/utility balancing test in turn.

### i.        The utility of the complained-of condition

Here, the alleged unreasonably dangerous condition is the protruding threaded rod, a component part of the trapeze hanger assembly, which was located at least 10 feet high in an allegedly "dimly lit" mechanical room.

An undisputed photograph of the trapeze hanger at issue was included in the report of Plaintiff's expert, Edward R. Ziegler, P.E., C.S.P. (R. Doc. 44-6). The report states that "[p]rotruding objects, such as the subject all-thread rod that reportedly extended about a foot below and past the bottom of a pipe or utility trapeze-type hanger, are a recognized hazard in industry and in the workplace, including for workers around or approaching objects." (R. Doc. 44-6 at 10).

The utility of the trapeze hanger assembly in general is not in question. Plaintiff, however, states that the utility of the "protruding rod" is "minimal" because it "served no structural purpose." (R. Doc. 44 at 6).

17

The Court has viewed the submitted photograph of the trapeze hanger assembly at issue. (*See* R. Doc. 44-6 at 10). The assembly at issue supports PVC pipes in the mechanical room of the Casino. It consists of two vertically threaded rods attached to the ceiling connected by a trapeze bar that appears to be supporting the weight of two parallel PVC pipes. One threaded rod appears to be extending less than one feet beyond the trapeze bar; the other threaded rod appears to extend more than one feet beyond the trapeze bar.[8] This second threaded rod is connected to another trapeze bar (less than a few inches from its end point) that runs perpendicular to the connecting trapeze bar to support another section of PVC pipe.

The Court finds no evidence that the *extent* of the protrusion of either vertical threaded rod lacks utility. Some measure of protrusion is required to ensure stability and to prevent the horizontal trapeze bar from detaching. Neither party submits any evidence of the industry standard for the acceptable length of this protrusion. Furthermore, as shown in the undisputed photograph, a significant protrusion of a vertical threaded rod allows for the attachment of a subsequent perpendicular threaded rod. While the Court will consider whether the extent of the protrusion resulted in an unreasonably hazardous condition, the Court first concludes that there is no genuine dispute that the protrusion of the rod serves some extent of utility.

### ii.    The likelihood and magnitude of harm, including the obviousness and apparentness of the condition

"The likelihood of the harm factor asks the degree to which the condition will likely cause harm. If it is likely to cause harm, that weighs in favor of finding it unreasonably dangerous. If it is unlikely to cause harm, that weighs in favor of it not being unreasonably

---

[8] The parties do not submit precise measurements of how far either threaded rod protruded beyond the trapeze bar or the actual size of the PVC pipes supported by the trapeze bar assemblies. Plaintiff's supervisor, Cody Israel, testified that the all-thread rod at issue protruded about "one foot" below the hanger. (R. Doc. 40-4 at 7; Israel Dep. Tr. 30:18-22). Only one of the two rods appears to protrude more than one feet beyond the trapeze bar.

dangerous. The magnitude of the harm factor asks whether the condition presents a risk of great or small injury and the likelihood of each. The likelihood and magnitude of the harm, includes a consideration of the open and obviousness of the condition." *Id*., 359 So. 3d at 474. "In evaluating the likelihood and magnitude of harm, including the obviousness and apparentness of the condition, relevant considerations include the size, context, and location of the condition, as well as the accident history." *Latour v. Steamboats, LLC*, 371 So. 3d 1026, 1036 (La. 2023).

There is no dispute that the threaded rod at issue did not present an unreasonable risk of harm to an individual walking on the floor of the mechanical room. Plaintiff admits that the trapeze hanger assembly was elevated, although he also states that the threaded rod "protruded downward into the ladder path." (Pl. St. ¶ 9). Plaintiff's supervisor, Cody Israel, testified that the trapeze hanger was about "ten foot or so" above the ground. (R. Doc. 40-4 at 7; Israel Dep. Tr. 30:23-25). There is no dispute that Plaintiff hit his head on the threaded rod only while ascending a 12-foot ladder. There is no dispute that an individual walking on the ground would not have hit his or her head on the protruding threaded rod.

The parties dispute, however, the likelihood and magnitude of the harm caused by the threaded rod *in the context of a worker ascending a 12-foot ladder placed directly under the threaded rod*. Defendant asserts that the "rod was very obvious and apparent" and that the incident "only occurred because [Plaintiff] and his co-workers set up a ladder under the threaded rod and then [Plaintiff] climbed the ladder without looking." (R. Doc. 40-1 at 7). In response, Plaintiff states that the likelihood and magnitude of the harm was "high" because "[o]verhead protrusions in dim areas are well-known to cause head and neck injuries." (R. Doc. 44 at 6).

"[W]hether a condition is open and obvious is embraced within the breach of the duty element of the duty/risk analysis and is not a jurisprudential doctrine barring recovery, but only a

factor of the risk/utility balancing test." *Farrell*, 359 So. 3d at 478. "For a hazard to be considered open and obvious, it must be one that is open and obvious to all who may encounter it. The open and obvious concept asks whether the complained of condition would be apparent to any reasonable person who might encounter it. If so, that reasonable person would avoid it, and the factor will weigh in favor of finding the condition not unreasonably dangerous. Whether the plaintiff has knowledge of the condition is irrelevant in determining whether the thing is defective. Otherwise, the analysis resurrects the long ago abolished doctrines of assumption of the risk and contributory negligence, both of which focus on the knowledge and acts of the plaintiff." *Id*. at 478.

Here, it is appropriate for the Court to consider whether the protruding threaded rod was "open and obvious" to a reasonable person placing and ascending a 12-foot ladder for the purpose of repairing a valve. The undisputed photograph shows that the trapeze hanger assembly could be seen from the ground. Mr. Israel testified that Plaintiff would have seen the protruding threaded rod "if he would have looked while he was climbing up," it was not hidden in any way, it could be seen from the ground, and the lighting, in his opinion, "was sufficient enough to see that all-thread hanger." (R. Doc. 40-4 at 12-13; Israel Dep. Tr. 72:22-73:17).

Plaintiff's reliance on Mr. Ziegler's report is insufficient. There is no evidence that Mr. Ziegler conducted an actual site inspection of the mechanical room to verify and evaluate the actual lighting conditions. Furthermore, in his report, Mr. Ziegler simply noted that "the mechanical room lighting was reported to be "dim" (by the Plaintiff) and that "OSHA 29 C.F.R. 1926 and building codes . . . require proper lighting at a work place." (R, Doc. 44-6 at 12).[9] Mr.

---

[9] Plaintiff states that Mr. Ziegler "independently evaluated the lighting and found it failed OSHA's minimum illumination standard in 29 C.F.R. 1926.56."  (R Doc. 44 at 2) (citing R. Doc. 44-6). This is an overstatement.

Ziegler does not otherwise provide any independent evaluation of the lighting of the mechanical room at the time of the incident or reach the conclusion that the lighting in the mechanical room was insufficient, whether measured against OSHA standards or otherwise.

The record shows that Plaintiff testified that he reported the "dim" lighting to his supervisors, including Mr. Israel, of the alleged dim lighting and that there was a need for "some lights" in the workspace. (R. Doc. 44-5 at 14-17, Dustin Boudreaux Dep. Tr. 54:10-16; 55-11-57:15). Plaintiff's testimony that the lighting in the mechanical room was "dim" is the only evidence of such. Plaintiff has not submitted any actual evidence of the lighting conditions in the mechanical room, including corroborating testimony. Even assuming that the mechanical room was not as well lit as other areas of the casino, this alone is not sufficient to support a determination that the condition was not open and obvious. The Court finds that Plaintif's "self-serving deposition testimony alone, without further corroboration is not sufficient to create a genuine issue of material fact for trial and defeat a summary judgment motion." *Morgan v. United States*, No. 07-1323, 2009 WL 928355, at *2 (W.D. La. Apr. 6, 2009) (citing *Vais Arms, Inc. v. Vais,* 383 F.3d 287, 294 (5th Cir. 2004) (finding affiant's self-serving statements in his affidavit insufficient to raise a genuine issue of material fact)).

The uncontroverted facts support the conclusion that this accident occurred because Plaintiff and/or his co-workers set up a ladder in a mechanical room under the threaded rod and then climbed the ladder without looking. Plaintiff's own testimony, accepted as true, shows that his employers were aware of any perceived lack of lighting in the mechanical room for the work at hand prior to requiring Plaintiff to complete his task. While Defendant had a duty of exercising reasonable care for the safety of Plaintiff, including taking reasonable steps to ensure a safe working environment, this duty does not extend to require Defendant "to intervene in and correct

21

the work practices selected by an independent contractor.'" *Cortez*, 2022 WL 3092859, at *9. Plaintiff testified that he reported the alleged dim lighting to his own supervisors. Plaintiff's supervisors had an opportunity to evaluate the lighting conditions and determine whether Plaintiff could proceed with his work. The record supports a finding that Plaintiff received his work instructions and directions from his supervisors (*i.e.*, Gallo Mechanical). Defendant did not breach it duty of reasonable care by failing to intercede in the decision of Plaintif's supervisors to allow Plaintiff to proceed with work in the mechanical room. *See Ainsworth*, 829 F.2d at 551; *Kent*, 418 So. 2d at 500.

Having considered the record, the Court finds the likelihood of harm to a reasonable individual placing and ascending a 12-foot ladder to work on valves is minimal. There is no evidence, other than Plaintiff's self-serving testimony, that the mechanical room was so dimly lit that Plaintiff could not see the protruding threaded rod. Even if the lighting was insufficient, a reasonable person would not place and ascend a 12-foot ladder without looking to see where he was going. More importantly, a reasonable person climbing such a ladder to work on equipment hanging from the ceiling would look for other protrusions that could interfere or result in injury, particularly ones that could be seen from the ground. The Court finds no case-specific factual issues precluding a finding that the protruding threaded rod was open and obvious under the circumstances. *But see Badeaux v. Ochsner Health Sys., Inc.*, 2025 WL 1591786, at *6, (La. App. 5th Cir. 2025) (finding "case-specific factual issues" regarding the open and obviousness of a medical device on the floor used to secure fluid that was rotated on opposite sides of beds every two hours and an overnight visitor "may have trouble perceiving [the medical device] in the room in the dim, ambient lighting); *Hays v. H2COW Props. LLC*, 376 So. 3d 143, 148 (La. App.

1st Cir. 2023) (finding genuine issues of material fact over "the adequacy of the lighting and markings in the sidewalk/curb area" where the plaintiff fell).

Defendant's duty, as premises owner, did not extend to controlling the manner of work directed and supervised by Plaintiff's employer. While the magnitude of injury caused by a protruding threaded rod is potentially severe, the likelihood of such injury is minimal (if non-existent) where the employer and/or its employee first ensures that no such potential hazard is present. Given the open and obviousness of the condition, the Court concludes that this factor is in favor of finding that the rod is not unreasonably dangerous.

### iii.    The costs of preventing the harm

Defendant argues that this factor "is not specifically applicable," but if applied it would weigh in its favor because the removal of the alleged harm would require Defendant "to remove anything overhead or anything that someone could put a ladder under." (R. Doc. 40-1 at 8). Plaintiff appears to address the issue of costs by presenting "safer alternatives" (including cutting, marking, capping, and guarding the rod and increasing the lighting) and arguing that there is a minimal "burden" placed on Defendant to emplace those safer alternatives (*i.e.*, "Cutting the rod or flagging it takes seconds"). (R. Doc. 44 at 7).

In support of his position, Plaintiff relies upon "OSHA's August 3, 1999 Interpretation Letter" which he states, "specifically identifies protruding rods as strike/impalement hazards requiring: caps, covers, bending, removal, or shortening." (R. Doc. 44 at 5) (citing R. Doc. 44-6). Plaintiff does not submit a copy of this letter into the record. Mr. Ziegler's report, however, references a "Letter from Russell B. Swanson OSHA Directorate of Construction August 3, 1999." (R. Doc. 44-6 at 11). According to Mr. Ziegler, this letter "establishes sharp objects or impalement as recognized hazards; which letter includes in part: 'Under the General Duty

23

Clause, we generally consider employers to be required to protect employees exposed to the hazard of impalement on sharp objects.'" (R. Doc. 44-6 at 11). This letter appears solely to concern the employer-employee relationship in a construction workplace and the danger of impalement. Plaintiff was neither Defendant's employee nor impaled.

Plaintiff's suggestion that the threaded rod protrusion could have been capped or covered would not have prevented the injuries incurred by Plaintiff, who was wearing a hard hat and not impaled. Plaintiff's other suggestions – that the threaded rod protrusion be bent, removed, or shortened – would also not support a finding that the injuries would have been presented and such alterations would also impede on the very utility of the protrusion as discussed above. The Court has also addressed the issue of the lighting in the mechanical room above.

This factor also weights in favor of a finding that the rod is not unreasonably dangerous.

### iv.     The nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature

Defendant argues that "Plaintiff was involved in a construction project which would naturally including certain risks," further stating that "[a]lthough there is some social utility in working and performing his job, there was no social utility in the way Plaintiff performed his job by setting up a ladder under a threaded rod and then not looking while ascending the ladder." (R. Doc. 40-1 at 8). Plaintiff does not address the factor of social utility.

Defendant is correct that Plaintiff's work inherently includes certain risks. Placing and ascending a 12-foot ladder in an enclosed space can also be seen as inherently dangerous work. This activity – in the context of repairing overhead valves – is socially valuable work. That said, there is no inherent social value in placing and ascending ladders to perform such work without determining whether any protrusions from the ceiling might result in injury. Furthermore, the

premises owner "does not owe a duty to protect the contractor's employees from risks inherent to the job." *Lopez*, 2020 WL 3668059, at *7; *see Perkins*, 671 So. 2d at 1040.

This factor weighs in favor of a finding that the protruding threaded rod was not an unreasonably dangerous condition.

## III.    CONCLUSION

In conclusion, the Court finds that while Defendant owed Plaintiff the duty of providing a safe workplace, Defendant did not breach that duty under the circumstances because there is no genuine dispute that the protruding threaded rod at issue did not present an unreasonably dangerous condition. Summary judgment is appropriate because reasonable minds could not disagree with this conclusion. *See Farrell*, 359 So. 3d at 478 ("Summary judgment, based on the absence of liability, may be granted upon a finding that reasonable minds could only agree that the condition was not unreasonably dangerous; therefore, the defendant did not breach the duty owed. In such instance, the plaintiff would be unable to prove the breach element at trial."). Accordingly, the Court need not consider the remaining elements of the duty/risk analysis.

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (R. Doc. 40) is **GRANTED**. The claims brought by Plaintiff, Dustin Boudreaux, and Plaintiff-Intervenor, Gallo Mechanical, LLC, against Defendant, St. Charles Gaming Company, LLC, are hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, Plaintiff shall file, within **14 days** of the date of this Order, any objection to the issuance of a **Final Judgment** dismissing his claims against the remaining named defendants: Caesars Entertainment, Inc., Caesars Resort Collection, LLC, CEOC, LLC, Isle of Capri

25

Casinos, LLC, and Caesars Entertainment Operating Company, LLC, for the reasons set forth above, reserving their rights to any appropriate appeal or relief as appropriate.

Signed in Baton Rouge, Louisiana, on April 28, 2026.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**